A05A0911. WARD v. THE STATE.
(618 SE2d 154)

MIKELL, Judge.

A Cobb County jury found Delorean Ward guilty of aggravated sexual battery, aggravated child molestation, and one count of child molestation. The jury acquitted Ward of rape, an additional count of child molestation, cruelty to children, and simple battery. On appeal from the order denying his motion for new trial, Ward argues that the trial court committed four errors: (1) denying his motion for a directed

---

verdict of acquittal; (2) admitting his custodial statement into evidence; (3) admitting evidence of a handgun and mask found during his arrest; and (4) denying his claim of ineffective assistance of counsel. We affirm.

1. Ward argues that the trial court erred in denying his motion for a directed verdict of acquittal because the state failed to prove that he acted with the requisite criminal intent. However, Ward faces an insurmountable hurdle in this regard, because

> [A] reviewing court will not disturb a factual determination by the jury on intent unless it is contrary to the evidence and clearly erroneous. The intent with which an act is done is peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground.[1]

Here, the victim, who was ten years old when the crimes were committed, testified that on New Year's Eve 2002, she was lying on the couch watching television when Ward came and laid down behind her. According to the victim, Ward began rubbing her legs. Then he touched her "private part" through her clothing, pulled down his pants as well as her pants, picked her up, and began rubbing her up and down against his "private part." The child told a detective in a videotaped interview that he put one of his fingers "up my hole . . . down there" and that his private part touched hers on the inside.

In his statement to police, Ward claimed that the victim was the sexual aggressor. He claimed that the victim put her foot in his crotch and began "grinding" on his hand. He further stated that his "memory went blank" during the incident. Ward testified at trial that he "periodically blanked out from knowing what was going on" because he had a medical condition called ADHD (Attention Deficit Hyperactivity Disorder) which made him black out occasionally.

Contrary to Ward's argument, his testimony that he "blanked out" during the incident did not demand a finding that he lacked the requisite criminal intent to commit the offenses for which he was convicted. Rather, the jury was free to reject his testimony and believe that of the victim. "Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the

---

[1] (Footnote omitted.) *Gearin v. State*, 255 Ga. App. 329, 332 (1) (565 SE2d 540) (2002).

State's case, the jury's verdict will be upheld."[2] Therefore, the trial court did not err in denying his motion for a directed verdict.

2. Ward argues that the trial court erred in admitting his custodial statement into evidence following a *Jackson-Denno*[3] hearing because it was not freely and intelligently made, and it was given with the hope of benefit. However, Ward waived any argument regarding the voluntariness of his statement. The videotape of Ward's statement was played during the hearing. It showed Ward being read his *Miranda* rights and responding to the detective, "I understand. Been here one too many times, man." Ward's counsel conceded that Ward voluntarily gave the statement. Counsel's only concern was that certain extraneous matters be redacted from the tape.

The court found that Ward was advised of each of his rights, understood and waived them, and thereafter gave his statement without any hope of benefit or fear of injury. The court agreed with defense counsel that certain matters needed to be redacted from the tape before it was played for the jury. Counsel raised no further objection until the videotape was admitted, at which time he stated that he renewed his objection "for the purposes of the record." However, counsel never argued that the statement was given with the hope of benefit. "Because grounds not presented to, nor specifically ruled upon by, the trial court are waived and not generally considered by this Court, this question is not properly before us for review."[4] It follows that Ward's contention that his statement was given with the hope of benefit has not been properly preserved for appellate review.

3. Ward next asserts that a Halloween mask and a handgun found in his duffle bag at the time of his arrest were erroneously admitted over his objection that the items were irrelevant. "Admissibility of evidence is a matter which rests largely within the discretion of the trial court."[5] "Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."[6] Georgia law favors the

---

[2] (Citation and punctuation omitted.) *Ney v. State*, 227 Ga. App. 496, 497 (1) (489 SE2d 509) (1997).

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[4] (Punctuation and footnote omitted.) *Goings v. State*, 265 Ga. App. 296, 301 (7) (593 SE2d 751) (2004). See also *Bixby v. State*, 254 Ga. App. 212-213 (1) (561 SE2d 870) (2002) (acquiescence in court's ruling deprives defendant of right to complain on appeal).

[5] (Citation and punctuation omitted.) *Hestley v. State*, 216 Ga. App. 573, 576 (2) (455 SE2d 333) (1995).

[6] (Punctuation and footnote omitted.) *Horton v. State*, 269 Ga. App. 407, 410 (2) (604 SE2d 273) (2004).

admission of any relevant evidence, no matter how slight its probative value, and even evidence of questionable or doubtful relevancy or competency should be admitted and its weight left to the jurors.[7]

In the case at bar, the victim testified that Ward wore the Halloween mask on the night of the incident and that it scared her. Thus, the mask was relevant to the victim's state of mind. The weapon was relevant to the issue of whether a state's witness, the victim's uncle Scott W., was biased against Ward. Scott, who was in another room in the house when the crimes occurred, testified that the victim came into his room and stated that Ward had had sex with her. Scott told Ward to leave the house. Ward packed his bags and proceeded outside. Scott went after him and struck him with a mop. According to Scott, Ward kicked him in the ribs and kept walking down the road. Neighbors had called the police, and they picked up Ward. Scott told the police that Ward had just raped Scott's niece and was carrying a 9mm gun. Moreover, on cross-examination, Scott testified that two weeks before this incident, Ward had pulled the same gun on him, and defense counsel sought to establish that "bad blood" existed between the two men and that Scott "hated" Ward. Under these circumstances, the trial court did not abuse its discretion in admitting the gun into evidence. The item was relevant to the issue of Scott's alleged bias, and was admissible as evidence of the circumstances of Ward's arrest.[8]

4. Despite his acquittal of rape, cruelty to children, simple battery, and one count of child molestation, Ward contends that trial counsel rendered ineffective assistance. The trial court denied Ward's motion for new trial on this ground following a hearing at which trial counsel testified. A trial court's finding that a defendant has been afforded effective assistance of counsel is entitled to deference and will be upheld unless that finding is clearly erroneous.[9]

Ward contends that his trial counsel was ineffective in two respects: (a) failing to investigate and present evidence at the *Jackson-Denno* hearing concerning his medical condition, ADHD; and (b) releasing the victim as a witness before questioning her regarding a prior false allegation of sexual misconduct. "To establish a claim of ineffective assistance of counsel, [Ward] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency."[10]

---

[7] *Hestley*, supra.

[8] See *Butts v. State*, 250 Ga. App. 695, 696 (1) (552 SE2d 888) (2001).

[9] *Rutledge v. State*, 237 Ga. App. 390, 392 (2) (515 SE2d 1) (1999).

[10] (Punctuation omitted.) *Ney*, supra at 499 (4), citing *Strickland v. Washington*, 466 U. S.

Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim.[11] Further, counsel's performance must not be evaluated in hindsight, and a strong presumption exists "that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy."[12] Bearing these principles in mind, we examine Ward's claim.

(a) Ward first asserts that trial counsel was deficient for failing to investigate and present evidence at the *Jackson-Denno* hearing concerning his medical condition, ADHD. Ward contends that, had such evidence been presented, the trial court would not have admitted his videotaped statement, which supported his conviction of aggravated child molestation. However, at the hearing on the motion for new trial, Ward presented no evidence other than the testimony of his mother and a family friend to show that he suffered from a mental defect. His mother testified that he had trouble focusing in school, suffered emotional problems, and received disability income until his arrest as a result of the condition. Although Ward had been to many physicians, none were summoned to testify. Consequently, Ward's argument that ADHD detrimentally affected his ability to understand his *Miranda* rights is pure speculation, and he has failed to show prejudice.[13] Counsel testified that he had no difficulty communicating with Ward and that he could not, "in good conscience agree that ADHD would make somebody unable to communicate effectively with me for their defense." Counsel indicated that his research indicated that ADHD and similar disorders were not legally recognized as defenses to testifying. "Counsel's decisions on matters of strategy, even if unwise, do not amount to ineffective assistance."[14] Having failed to show deficient performance or prejudice, Ward has failed to establish ineffectiveness of counsel on this ground.[15]

(b) Ward next asserts that, had trial counsel questioned the victim regarding a prior false allegation of sexual misconduct, there is a reasonable likelihood that the outcome of the trial would have been different. In this regard, the trial transcript reveals that trial counsel sought, and ultimately obtained, a ruling from the trial court

---

668, 688 (104 SC 2052, 80 LE2d 674) (1984).

[11] *Ward v. State*, 242 Ga. App. 246, 248 (2) (529 SE2d 378) (2000).

[12] (Citations and punctuation omitted.) *Wynn v. State*, 228 Ga. App. 124, 127 (3) (491 SE2d 149) (1997).

[13] See, e.g., *Hammond v. State*, 264 Ga. 879, 884 (5) (452 SE2d 745) (1995) (failure to explore alleged "attention deficit disorder" not deficient).

[14] (Footnote omitted.) *Sanders v. State*, 245 Ga. App. 701, 703 (4) (538 SE2d 772) (2000).

[15] See, e.g., *Myers v. State*, 275 Ga. 709, 714 (4) (572 SE2d 606) (2002) (counsel's failure to establish defendant's level of medication at *Jackson-Denno* hearing does not constitute ineffective assistance).

permitting him to introduce evidence that the victim had testified in a previous case that a man named Holmes had rolled up his shirt and touched his stomach, whereas the arresting officer reported that the victim had stated that Holmes had touched "himself," and the child's mother testified that the victim had stated that he was rubbing his "private area."

In the case at bar, the trial court ruled the evidence admissible "out of an abundance of caution" after the victim had been excused as a witness. The officer who took the report from the child's mother testified that at approximately the same time, the child had been molested by another man, McKinney, who was prosecuted and convicted. The officer did not know the disposition of the allegations against Holmes. Trial counsel questioned the child's mother about the allegation against Holmes, and she admitted that no authority figure had ever questioned her about the man. Counsel also asked the mother, "[W]ould it shock you to know that [the victim] said that he never touched his private parts but that he only rubbed his belly?" The mother replied, "from what she told me, that's what happened." Counsel then sought to call the victim to the stand, but the prosecutor stated that the defense had excused the witness. Relying upon that representation, and realizing that he did not have the witness under subpoena, the defense rested. In fact, the prosecutor was incorrect; after the victim testified, the court agreed, at trial counsel's request, that the victim would remain on call. Despite counsel's failure to insist upon his right to recall the witness, we find no clear error in the trial court's ruling that counsel rendered effective assistance. Through his skillful examination of the child's mother and the police officer, trial counsel showed the jury that the victim's allegation against Holmes had not resulted in his conviction. Counsel also revealed to the jury the substance of the child's allegation against Holmes.

Moreover, even if counsel's failure to recall the witness fell outside "the wide range of reasonable professional assistance," we note that the victim was not called to testify in the motion for new trial hearing. "Without [her] testimony, we cannot say that there is a reasonable probability that the outcome of the proceedings might have been different."[16] Finally, the evidence of Ward's guilt of aggravated child molestation was overwhelming. Dr. Despina Dalton, a pediatric emergency physician, testified that she examined the victim at Cobb Hospital on the night of the incident. According to Dr. Dalton, the victim's vulva was swollen and her hymen was torn. Dr. Dalton testified that these injuries were consistent with penetration by a foreign object, including a finger, and had occurred within the

---

[16] (Footnote omitted.) *Duvall v. State*, 273 Ga. App. 143, 146 (3) (d) (614 SE2d 234) (2005).

previous 24 hours. A detective testified that he asked the victim what happened twice, and "her story didn't change one bit." "We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[17] Given the overwhelming evidence of Ward's guilt, and the introduction of evidence concerning the child's false allegation against Holmes, Ward has not shown that but for his trial counsel's failure to recall the child, there would have been a different outcome at trial.[18]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 19, 2005 — ▮▮▮▮▮

*James W. Gibert*, for appellant.

*Patrick H. Head, District Attorney, Eleanor A. Dixon, Amy H. McChesney, Assistant District Attorneys*, for appellee.

---

[17] (Citation omitted.) *Willingham v. State*, 241 Ga. App. 509, 510 (2) (527 SE2d 232) (1999) (failure to object to testimony regarding defendant's sexual dreams and fantasies involving his niece did not prejudice his defense of child molestation and statutory rape of his daughter).

[18] See, e.g., *Corn v. State*, 256 Ga. App. 364, 366 (4) (568 SE2d 583) (2002) (counsel failed to object to the introduction of pictures of nude women found in his room; no prejudice because of overwhelming evidence of guilt).